IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| RONALD FORREST, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. G-05-693 |
| § | |
| OMEGA PROTEIN CORPORATION, § | |
| OMEGA PROTEIN, INC., and § | |
| and the M/V TIDELAND, § | |
| § | |
| Defendants. § | |

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE TO THE RICHMOND DIVISION OF THE EASTERN DISTRICT OF VIRGINIA**

This case arises out of personal injuries sustained by Ronald Forrest ("Plaintiff") while aboard the M/V TIDELAND ("TIDELAND"), a vessel owned and operated by Defendant Omega Protein, Inc. ("OPI"). Now before the Court is Defendants Omega Protein Corporation, OPI, and the TIDELAND's (collectively, "Defendants") Motion to Transfer Venue to the Eastern District of Virginia, Richmond Division. For the reasons stated below, Defendants' Motion is **GRANTED,** and this case is hereby **TRANSFERRED** to the Eastern District of Virginia, Richmond Division.[1]

**I. Background**

Plaintiff claims that he was injured on or about August 11, 2005, while attempting to tie up the TIDELAND to OPI's dock in Reedville, Virginia. Plaintiff allegedly fell off the dock into the area between the vessel and the dock after he jumped from the vessel to put out lines. Plaintiff was

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

a crewmember on the TIDELAND, which is owned and operated by OPI, a Virginia corporation with principal places of business in Louisiana, Mississippi, and Virginia. In late 2005, following Hurricanes Katrina and Rita, OPI's Marketing and Accounting Departments were relocated to Houston, Texas. OPI harvests and processes menhaden (a herring-like fish) from the United States coastal waters of the Atlantic Ocean and the Gulf of Mexico. OPI operates four processing plants in Virginia, Louisiana, and Mississippi. The day-to-day fishing activities of any particular fishing vessel are run out of the plant at which the particular vessel operates out of. Omega Protein Corporation ("OPC") is the parent company of OPI, and it is headquartered in Houston, Texas.

Defendants move this Court to transfer this case to the Eastern District of Virginia on two alternate grounds. First, that under the consent to jurisdiction agreement executed between Plaintiff and OPI, the Parties agreed to submit any action arising out of or relating to Plaintiff's employment to any state or federal court in the State of Virginia where proper venue could be had. Alternatively, Defendants argue that this Court should transfer this case pursuant to 28 U.S.C. § 1404(a). Each argument will be analyzed in turn.

**II. Validity of Choice of Forum Agreement**

Plaintiff's employment agreement with OPI contained a forum selection clause, providing that the Parties agreed to submit any action arising out of or relating to Plaintiff's employment to any state or federal court in the State of Virginia in which proper venue could be had. That agreement also expressly provided that it applied to any action based on personal injuries. Defendants argue that the agreement should be enforced, and accordingly that the Court transfer this case to the Eastern District of Virginia. However, in *Boutte v. Cenac Towing, Inc.*, 346 F. Supp. 2d 922 (S.D. Tex. 2004), this Court held that "choice of forum agreements in employment contracts between American

seaman and American companies are unenforceable in Jones Act claims." *Id.* at 932. This is a Jones Act case, and therefore the choice of forum provision in the employment contract is unenforceable. The Court acknowledges Defendants' disagreement with the holding in *Boutte*, but Defendants have not offered any persuasive argument or controlling authority moving this Court to abandon the holding in that case. Therefore, pursuant to *Boutte*, the Court respectfully declines to transfer this matter to the Eastern District of Virginia based upon the forum selection clause in the employment contract.

### III. Transfer Pursuant to 28 U.S.C. § 1404(a)

#### A. Legal Standard

The federal venue transfer statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The movant bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (requiring the movant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed."). In determining whether a venue transfer is warranted, the Court considers the availability and convenience of witnesses and parties; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the location of pertinent books and records; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum, which is generally entitled to great deference. *See, e.g.*, *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1065 (S.D. Tex. 1996); *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D.

Tex. 1993); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1395–96 (S.D. Tex. 1992). The decision to transfer a case lies within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet*, 868 F.2d at 1436.

**B. Analysis**

*1. Availability and Convenience of Witnesses*

"The availability and convenience of witnesses is arguably the most important of the factors" in the § 1404 analysis. *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) (citing 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851, at 415 (1986)). To support a Motion to Transfer on this ground, the movant must identify key witnesses and provide a brief outline of their testimony. *See id.* (citing *Dupre*, 810 F. Supp. at 825). "The convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Id.*

Defendants argue that most if not all of the key witnesses reside in Virginia, and that the transfer of this case to Virginia would substantially increase the availability and convenience of key witnesses. In support of this argument, Defendants identified three groups of witnesses: (1) other crewmembers on the TIDELAND; (2) Plaintiff's initial treating physicians in Virginia; and (3) corporate representatives of OPI from Louisiana. All but one of the other crewmembers of the TIDELAND who witnessed the alleged accident are residents of Virginia. Although the crewmembers of the TIDELAND and OPI's corporate representatives are all beyond the subpoena power of this Court, their attendance may be compelled at trial since they are all employees of OPI. *See Lajaunie v. L & M Bo-Truc Rental, Inc.*, 261 F. Supp. 2d 751, 754 (S.D. Tex. 2003) (finding that defendants can compel the attendance at trial of their own employees so the availability and

convenience of such potential witnesses is given less weight). Their availability and convenience is given little weight. On the other hand, all of the physicians that treated Plaintiff immediately following the alleged accident, and for several months thereafter, are all residents of Virginia. Their attendance at trial cannot be compelled by Defendants, and they are beyond the subpoena power of this Court. Although physicians routinely appear at trial through deposition, which can be presented conveniently anywhere, their availability and convenience weighs legitimately in the Court's analysis. Additionally, Defendants point out that Plaintiff is a Virginia resident.

In Response, Plaintiff argues that his current treating physician and expert economist reside within this District. But, as retained experts, Plaintiff can compel both his physician and his economist to attend trial. Thus, their availability and convenience are given relatively lesser weight. Plaintiff also argues that OPC is headquartered in Houston, and that OPI's corporate representatives are located in Houston. First, Plaintiff has failed to show what role, if any, OPC will have in this litigation. OPI is the company that actually employed Plaintiff, and OPI owns and operates the TIDELAND. At this time there are no facts connecting OPC to this litigation beyond its status as merely the parent corporation of OPI. Second, the corporate representatives of OPI that are likely to testify at a trial in this matter are located in Baton Rogue, Louisiana and/or Reedville, Virginia, not Houston, Texas, which houses only OPI's Marketing and Accounting departments. The location of OPC as well as the location of OPI's Marketing and Accounting departments is worthy of little weight in this analysis.

Defendants have therefore shown that the availability and convenience of key witnesses would be increased if this case is transferred to the Eastern District of Virginia. This factor supports transfer.

*2. Cost of Obtaining the Attendance of Witnesses and Other Trial Expenses*

Parties to litigation face unavoidable costs in almost every case that goes to trial. *See Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1108 (S.D. Tex. 1997). Furthermore, it is "rare that the forum in which the case is litigated is the most convenient or least costly for all the parties involved." *Id.* In this case, the connection to Virginia is both legitimate and substantial, and the overwhelming majority of the witnesses, documents, and other evidence are located in Virginia. Plaintiff is a resident of Virginia and worked out of OPI's facility in Reedville, Virginia. It is reasonable to infer that the expenses of trial will be lessened if trial is held in Richmond, Virginia, rather than Galveston, Texas. This factor supports transfer.

*3. Location of Books and Records*

The location of books and records is generally of little importance in a personal injury case. Although Defendants have identified a number of medical records from Plaintiff's initial treating physicians in Virginia, they have not given the Court any indication that these records are so voluminous that it would incur substantial cost in transporting them to this Court. *See LeBouef*, 20 F. Supp. 2d at 1060. Nor has Plaintiff indicated that it would incur substantial cost in transporting documents to Virginia. This factor does not weigh for or against transfer.

*4. Plaintiff's Choice of Forum*

Plaintiff's choice of forum is generally entitled to great deference. However, Plaintiff's choice of forum is entitled to less deference when he does not reside within this Division or even this District. *See, e.g.*, *Robertson*, 979 F. Supp. at 1109 (finding that a Mississippi plaintiff's choice of the Southern District of Texas was entitled to little or no deference where the case had no connection to the forum). Plaintiff is a resident of Virginia. While this case has some connection to this District

due to the fact that OPC is headquartered in Houston and OPI has had to move some of its personnel to Houston, this is not enough of a connection to give any substantial weight to Plaintiff's choice of forum. This is especially true in light of the overwhelming connections to Virginia. This factor weighs neither for nor against transfer.

     *5. Place of the Alleged Wrong*

The place of the alleged wrong is one of the more important factors in venue determinations. *See Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 733 (S.D. Tex. 2002); *Robertson*, 979 F. Supp. at 1106. The alleged wrong in this case took place in Reedville, Virginia, which is located within the Eastern District of Virginia, Richmond Division. This case has absolutely no connection to Galveston, Texas, and the residents of this Division have little if any interest in the outcome of this litigation. On the other hand, the residents of Virginia have a clear interest in the outcome given that the lawsuit involves Virginia residents and a company that does substantial business in Virginia. This factor supports transfer.

     *6. Potential for Delay and Prejudice*

Any transfer will produce some delay, and as such, Plaintiff must show that a transfer at this stage of the proceedings would cause a significant or unusual delay. *See In Re: Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2002) ("[I]n rare and special circumstances a factor of 'delay' or 'prejudice' might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence."). This case is not set for trial until October 12, 2006, almost five months away. Plaintiff makes no claim of prejudice other than the fact that if this case is transferred, he will lose the benefit of this Court's fast trial docket. Although the Court appreciates and is flattered by Plaintiff's desire to remain in Galveston, a general reference

due to the fact that OPC is headquartered in Houston and OPI has had to move some of its personnel to Houston, this is not enough of a connection to give any substantial weight to Plaintiff's choice of forum. This is especially true in light of the overwhelming connections to Virginia. This factor weighs neither for nor against transfer.

*5. Place of the Alleged Wrong*

The place of the alleged wrong is one of the more important factors in venue determinations. *See Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 733 (S.D. Tex. 2002); *Robertson*, 979 F. Supp. at 1106. The alleged wrong in this case took place in Reedville, Virginia, which is located within the Eastern District of Virginia, Richmond Division. This case has absolutely no connection to Galveston, Texas, and the residents of this Division have little if any interest in the outcome of this litigation. On the other hand, the residents of Virginia have a clear interest in the outcome given that the lawsuit involves Virginia residents and a company that does substantial business in Virginia. This factor supports transfer.

*6. Potential for Delay and Prejudice*

Any transfer will produce some delay, and as such, Plaintiff must show that a transfer at this stage of the proceedings would cause a significant or unusual delay. *See In Re: Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2002) ("[I]n rare and special circumstances a factor of 'delay' or 'prejudice' might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence."). This case is not set for trial until October 12, 2006, almost five months away. Plaintiff makes no claim of prejudice other than the fact that if this case is transferred, he will lose the benefit of this Court's fast trial docket. Although the Court appreciates and is flattered by Plaintiff's desire to remain in Galveston, a general reference

to the possibility of delay is not enough to establish significant delay or prejudice by clear and convincing evidence as required in the Fifth Circuit. *See id.* Moreover, the Richmond Division enjoys the same reputation as does this Court for expeditious case resolutions. Therefore, Plaintiff has failed to show that he would suffer significant delay or prejudice by a transfer at this stage in the proceedings.

**IV. Conclusion**

After careful examination of the relevant venue factors coupled with the specific facts of this lawsuit, the Court concludes that Defendants have carried their burden of demonstrating that transferring this case to the Eastern District of Virginia would increase the convenience of all involved, and that such transfer would be in the interests of justice. For these reasons, and those outlined above, Defendants' Motion to Transfer Venue is **GRANTED**, and this case is hereby **TRANSFERRED** to the Eastern District of Virginia, Richmond Division. Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.

**IT IS SO ORDERED.**

**DONE** this 17th day of May, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge